## Appeal of NORTHERN MICHIGAN TRANSPORTATION CO.

Docket No. 3168.   Submitted July 6, 1925.   Decided December 31, 1925.

> The taxpayer which, by its charter, was authorized to operate steamships for hire upon the Great Lakes and upon the high seas, purchased from the United States two steamships which were delivered to it in the ports of New York and Boston. In order that certain repairs and changes necessary for profitable operation might be made, and in order that the vessels might be more profitably operated in its business, taxpayer caused the vessels to be removed under their own power from New York and Boston to its dock at Milwaukee, at a cost of $45,627.97. *Held,* that the cost of transporting the vessels was a legal deduction from gross income as an ordinary and necessary business expense.

*Robert Ash, Esq.,* for the taxpayer.
*M. N. Fisher, Esq.,* for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the calendar year 1919 in the amount of $21,876.94, arising from the refusal of the Commissioner to permit the taxpayer to deduct as an ordinary and necessary business expense for the calendar year 1919 the sum of $45,627.97, paid by it in transporting from New York and Boston to Milwaukee two steamships purchased by it from the United States Government.

## FINDINGS OF FACT.

The taxpayer is a Wisconsin corporation with its principal office at Chicago, Ill., and is engaged in the business of transportation for hire upon the Great Lakes and the high seas. In 1919, it operated steamers between Chicago, Milwaukee, and other Lake ports, and, in addition, chartered to others certain of its ships for service to points designated by the charterer. Its charter provided in part as follows:

> To carry on a general transportation business for passengers and freight upon the Great Lakes, and all other lakes and rivers and harbors and all other waters tributary thereto, both within, without, or contiguous to the borders of the United States, and also upon the high seas.

In November, 1919, the taxpayer, being in need of additional ships, purchased from the United States Government the S. S. *Puritan* and the S. S. *General O'Reilly*, which were at the time of purchase lying in the ports of New York and Boston, respectively, where they were delivered to the taxpayer. These vessels had previously operated on the Great Lakes and were well known to taxpayer. They were acquired by the taxpayer upon competitive bids. At the time of purchase the vessels were in condition to be operated by the taxpayer, but, in order to be thoroughly satisfactory and operated profitably, certain repairs and changes were necessary. These repairs were subsequently made and charged to capital account. Immediately upon delivery of the vessels the taxpayer caused them to be transported under their own power from the ports of New York and Boston to its dry dock at Milwaukee at an expense of $45,627.97.

On its voyage from New York to Milwaukee the *Puritan* carried about four carloads of supplies, consisting of lifeboats, life rafts, life preservers, mattresses, blankets, etc., which were also purchased by the taxpayer from the United States Government.

The *General O'Reilly* on its voyage from Boston to Milwaukee came upon a wrecked coal vessel in the St. Lawrence River, from which taxpayer purchased 600 tons of coal at $7 per ton. This coal was transported on the *General O'Reilly* for use by the taxpayer in its business. The *General O'Reilly*, with minor changes, was put into service soon after its arrival at Milwaukee.

The *Puritan* had been converted by the United States Government into a hospital ship, and considerable repairs and changes were necessary to make it fully serviceable. It was placed in service some time during the year 1920.

Had taxpayer desired, it could, under its charter, have placed these ships in service for hire at the ports of delivery. It concluded, however, that it was to the best interest of its business to move

the vessels to winter quarters at Milwaukee, and, after certain changes and repairs, to place them in service from that port.

### DECISION.

The deficiency, if any, should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, under Rule 50.

### OPINION.

LITTLETON: The taxpayer contends that the cost of removing to Milwaukee the two vessels purchased from the United States Government and delivered to it in the ports of New York and Boston was an ordinary and necessary business expense and deductible from gross income. The Commissioner, on the other hand, contends that the cost of moving the vessels was a part of their cost and should be capitalized.

We are of the opinion that the Commissioner was in error in refusing to allow the taxpayer to deduct as an ordinary and necessary business expense the cost of transporting the vessels from New York and Boston to Milwaukee.

Taxpayer for many years had been engaged in the business of transporting freight and passengers for hire under a charter which authorized it to engage in this business upon the Great Lakes and upon the high seas. Upon delivery of the vessels to it by the United States Government, taxpayer deemed it to its best interest to remove them to Milwaukee for repairs and changes and to place them in service at that point. Accordingly, they were transported under their own power to Milwaukee at a cost of $45,627.97, for wages, fuel, food, insurance, etc.

The fact that the ships might have carried a cargo for hire, or supplies for taxpayer, or no cargo at all, does not, in our opinion, change the character of the expenditure. We are of the opinion from the evidence in this appeal that the cost of transporting the vessels from New York and Boston to Milwaukee was an ordinary and necessary business expense and deductible from gross income for the year 1919.

On reference to the Board, TRAMMELL dissents.